IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| MIRACLE MILE TRUCKING AND LOGISTICS LLC, | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| vs. | : | |
| | : | 1:18-CV-1694-CC |
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. No. 44]. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.

**I. FACTS[1]**

Plaintiff Miracle Mile Trucking and Logistics, LLC ("Plaintiff" or "Miracle Mile") is a commercial trucking business. (Plaintiff's Statement of Material Facts to Which There is No Genuine Issue to be Tried "PSMF" ¶ 1.) Miracle Mile has

---

[1] The Court takes these facts from Plaintiff's Statement of Material Facts to Which There is No Genuine Issue to be Tried. Because Defendant has not filed a response to the facts presented by Plaintiff, as required by Local Rule 56.1(B)(2), the Court deems admitted all of Plaintiff's facts that are properly supported by evidence.

been in business since November 13, 2010, and Miracle Mile's sole owner is Steven Cantrell. (Id. ¶¶ 2-3.)

On March 9, 2016, Miracle Mile entered into an agreement (the "Agreement") for Defendant Progressive Mountain Insurance Company ("Defendant" or "Progressive") to provide one year of liability coverage insurance to Miracle Mile beginning on March 10, 2016. (Id. ¶ 4.) In March 2016, Progressive made BMC91x and MCS90 filings with the Federal Motor Carrier Safety Administration ("FMCSA") showing that Miracle Mile had $750,000 in coverage. (Id. ¶ 5.)

Around March 22, 2016, Miracle Mile reviewed its mail and received a letter from the FMCSA revoking Miracle Mile's authority to continue as a commercial trucking business. (Id. ¶ 7.) The letter from the FMCSA, dated March 16, 2016, stated that since Miracle Mile failed to comply with the terms of a letter from the FMCSA dated February 12, 2016, Miracle Mile's authority was going to be revoked. (Id. ¶ 9.) During the course of discovery, Miracle Mile failed to produce any letter from the FMCSA from February 12, 2016. (Id. ¶ 10.) That letter was written by the FMCSA about one month before Progressive provided any insurance to Miracle Mile. (Id. ¶ 11.)

On March 22, 2016, Miracle Mile (or its agent) communicated to Progressive that Progressive made improper filings. (Id. ¶ 12.) Miracle Mile's business was

allegedly shut down about ten days in March 2016. (Id. ¶ 13.) Miracle Mile was back in business no later than March 29, 2016, as the evidence shows that Miracle Mile did a truck run from March 29, 2016 through April 8, 2016. (Id. ¶ 14.) The only run that Miracle Mile had scheduled and confirmed while its authority was revoked was on March 22, 2016. (Id. ¶ 15.) That run was for only $284.07. (Id. ¶ 16.) On June 2, 2016, Progressive wrote a letter to Miracle Mile stating that Progressive had improperly filed certain documents with the FMCSA. (Id. ¶ 6.)

On August 21, 2018, Progressive, through its attorneys, sent the FMCSA a request under the Freedom of Information Act ("FOIA"). (Id. ¶ 17.) The FOIA request sought documents related to the purported revocation of Miracle Mile's authority with regard to the FMCSA. (Id. ¶ 18.) The FMCSA responded on August 31, 2018, attaching the only document that it had responsive to Progressive's FOIA request. (Id. ¶ 19.) The FMCSA's FOIA response did not include any documents pertaining to a March 16, 2016, revocation of authority related to Miracle Mile. (Id. ¶ 20.) The only document included was a Notice of Investigation of Miracle Mile for Revocation of Authority, which was dated January 5, 2015. (Id. ¶ 21.) In fact, the FMCSA did not include any document showing that Miracle Mile's registration was ever revoked. (Id. ¶ 22.)

In any event, not only did Miracle Mile miss just one run in March 2016, but Miracle Mile's overall business improved from 2015 to 2016. (Id. ¶ 23.) Also,

3

Miracle Mile's net income increased each year from 2014 through 2016. (Id. ¶ 24.) In fact, 2016, the year of revocation, was the year that Miracle Mile had its highest net income ever to that point. (Id. ¶ 25.) Miracle Mile's sole owner and manager, Mr. Cantrell, could not testify in his deposition as to the amount of damages sustained by Miracle Mile. (Id. ¶ 26.)

Following the revocation, Miracle Mile contacted numerous companies, including companies with whom Miracle Mile has never done business. (Id. ¶ 27.) Almost all of the companies stated that they would continue to do business with Miracle Mile, even with an alleged revocation on Miracle Mile's record. (Id. ¶ 28.) Only two companies informed Miracle Mile that they would not do business with Miracle Mile because of the revocation of authority on its record. (Id. ¶ 29.) Miracle Mile had never done business with at least one of those two companies prior to the March 2016 alleged revocation. (Id. ¶ 30.)

While Evans Transportation purportedly declined to do business with Miracle Mile, Miracle Mile is unaware how much it would have made from any work for Evans Transportation. (Id. ¶ 31.) Miracle Mile had never attempted to do business with Evans Transportation until after the Complaint was filed. (Id. ¶ 32.) There were dozens of other companies that indicated they would do business with Miracle Mile for which Miracle Mile never did business. (Id. ¶ 33.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the entry of summary judgment when no genuine issue as to any material fact is present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In seeking summary judgment, the moving party bears the initial responsibility to demonstrate that there is no genuine issue as to any material fact and that summary judgment is appropriate. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Allen v. Bd. of Public Educ., 495 F.3d 1306, 1313 (11th Cir. 2007). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When evaluating the merits of a motion for summary judgment, the court must view all evidence and factual inferences raised by the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts concerning the facts in favor of the non-moving party. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted). The court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

A fact is material if proof of its existence or nonexistence would affect the outcome of the case under controlling substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Additionally, an issue of fact is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Id. An issue of fact is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or "not significantly probative." Id. at 249-250. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).

## III. ANALYSIS

### A. Breach of Contract

Defendant moves the Court to enter summary judgment in its favor and to dismiss Plaintiff's claim for breach of contract. Defendant asserts that there is no evidence of liability. Defendant alternatively argues that the Court should limit damages in the case to $284.07, because there is no evidence of additional damages that is not based on speculation. The Court disagrees with Defendant as to the issue of liability on the breach of contract claim but agrees with Defendant as to damages.

*1. Liability*

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." SAWS at Seven Hills, LLC v. Forestar Realty, Inc., 342 Ga. App. 780, 784, 805 S.E.2d 270 (2017) (citation and punctuation omitted). Viewing the evidence in the light most favorable to Miracle Mile, as the non-movant, the Court finds that Progressive has not met its burden of showing that it is entitled to summary judgment with respect to Miracle Mile's breach of contract claim. Without even considering the evidence that Miracle Mile attempts to present, the evidence relied on by Progressive demonstrates the existence of genuine issues regarding whether Progressive breached its contract with Miracle Mile and caused Miracle Mile to suffer damages. As such, Progressive is not entitled to summary judgment as to liability.

Progressive's summary judgment filings show that Miracle Mile and Progressive entered into an Agreement for Progressive to provide one year of liability coverage insurance in the amount of $1,000,000 beginning on March 10, 2016. (Doc. No. 44-4 at 11.) On March 9, 2016, Progressive filed BMC91x and MCS90 filings with the FMCSA with limits of $750,000 for Miracle Mile. (Doc. No. 44-5.) Progressive conceded in a letter to Miracle Mile that the $750,000 limit was insufficient for the operating authority, as the minimum requirement was

$1,000,000. (Id.) On March 16, 2016, the FMCSA issued a decision revoking Miracle Mile's authority to continue as a commercial trucking business. (Doc. No. 44-6.) The letter communicating the revocation decision did not specify the reason for the revocation, except to state that Miracle Mile had failed to comply with a decision of the U.S. Department of Transportation entered February 12, 2016. (See id.) The communication informed Miracle Mile about the reinstatement process and explained that appropriate insurance filings would have to be submitted in order to reinstate the authority. (See id.) Around the same date that Miracle Mile received the letter from the FMCSA, which was either March 21 or 22, 2016, Miracle Mile communicated to Progressive that Progressive made improper filings. (Deposition of Steven Cantrell "Cantrell Dep." [Doc. No. 44-3] at 113:4-20.) Progressive corrected the filing by March 22, 2016. (Id. at 113:16-20.) Miracle Mile was back in business no later than March 29, 2016. (Id. at 125:4-14.) On June 2, 2016, Progressive acknowledged having improperly filed documents with the FMCSA and stated that, as of March 22, 2016, Progressive had corrected the filings back to the inception date of the policy with the required limit. (Doc. No. 44-5.) As a result of Miracle Mile's business being shut down for about ten or eleven days in March 2016, Miracle Mile was unable to complete a run that was scheduled on March 22, 2016. (Cantrell Dep. at 121:22-122:15.)

Drawing all reasonable inferences in Miracle Mile's favor, Progressive is not entitled to summary judgment on the breach of contract claim. Progressive questions in its summary judgment papers whether Miracle Mile's authority to operate was actually revoked, but the revocation letter issued on March 16, 2016, indicates that Miracle Mile's authority was revoked or at least creates a genuine issue of material fact regarding whether Miracle Mile's authority was revoked. The evidence attached to Miracle Mile's motion further shows that there also is a genuine issue of material fact regarding whether Progressive's improper filings with the FMCSA caused the FMCSA to revoke Miracle Mile's license to operate its business. The timing of the improper filings, the revocation, the correction of the filings, and the reinstatement suggest that the revocation was related to the improper filings. This is evidence that should go before a jury for consideration. Finally, while evidence of a substantial amount of damages is lacking, there is evidence that Miracle Mile was not able to complete a scheduled run for which Miracle Mile would have been paid during the time that its authority was revoked. In sum, summary judgment as to Progressive's liability for breach of contract is due to be denied.

    2. *Amount of Damages*

Progressive alternatively moves the Court to limit Miracle Mile's damages to $284.07, which is the amount that Miracle Mile was to receive for the scheduled

run it was unable to complete in March 2016. Progressive asserts that Miracle Mile's other alleged losses are too speculative to be recoverable and cannot be proven with reasonable certainty. The Court agrees.

"Damages growing out of a breach of contract, in order to form a basis of recovery, must be such as could be traced solely to breach, be capable of exact computation, must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach." Crawford & Assocs. v. Groves-Keen, Inc., 127 Ga. App. 646, 650, 194 S.E.2d 499 (1972) (citation and punctuation omitted). "The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty." Walton v. Datry, 185 Ga. App. 88, 95, 363 S.E.2d 295 (1987) (citation and punctuation omitted). "The jury must be able to calculate the amount of loss from the data furnished, and will not be placed in a position where an allowance of the loss is based on guesswork." Roland v. Byrd, 163 Ga. App. 408, 410, 294 S.E.2d 626 (1982) (citation omitted). Hence, the plaintiff must prove that any damages claimed were actually caused by the alleged breach, and the amount of damages must be capable of proof to a reasonable certainty and not left to conjecture. See Kroger Co. v. U.S. Foodservice of Atlanta, Inc., 270 Ga. App. 525, 528, 607 S.E.2d 177 (2004) ("It is axiomatic that damages

cannot be left to speculation, conjecture, or guess-work and must be proven with reasonable certainty.").

Here, by failing to respond properly to Defendant's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, Miracle Mile has conceded that it only missed one run in March 2016. Miracle Mile argues in its response brief that it is entitled to recover $8,299.03 for multiple loads that were cancelled as a result of the revocation of authority. However, in addition to Miracle Mile's failure to respond properly to Progressive's summary judgment filings and to file its own statement of additional facts presenting a genuine issue for trial, which complies with Local Rule 56.1(B)(1), the above-mentioned loads were "[s]cheduled but not yet confirmed." (Cantrell Dep. at 122:9-15.) These loads also overlapped with another run that Miracle Mile ended up doing between March 29, 2016 through April 8, 2018. (Id. at 125:4-14.) Miracle Mile's owner and manager acknowledged that Miracle Mile likely would not have been able to complete the loads valued at $8,299.03, as the 16-day run for those loads beginning on March 21st would have overlapped with the run that Miracle Mile ultimately did beginning on March 29th. (Id. at 125:20-126:4.)

Further, Miracle Mile's sole owner and manager was not able to testify in his deposition as to the amount of damages to Miracle Mile. (Id. at 210:1-212:8.) He acknowledged that he could only testify "speculatively" as to the actual

11

damages sustained by Miracle Mile, and he stated that he did not understand the meaning of expectation damages. (Id. at 211:3-5-212:8.) While Miracle Mile seeks damages for injury to its reputation and asserts that there were two companies that would not do business with Miracle Mile because there was a revocation of authority on Miracle Mile's record, there is no testimonial or documentary evidence indicating the value of any missed runs with these two companies. Miracle Mile's owner and manager testified that he would have "[n]o way to guess" about the value of any missed runs and would have to "[d]eeply speculate." (Id. at 155:4-159:14.) Finally, Miracle Mile generally asserts that its business was significantly and negatively impacted by its authority revocation for far greater than ten days in March 2016, but Miracle Mile points to no evidence supporting this assertion.

The only evidence that Miracle Mile has presented that would permit a jury to determine damages with reasonable certainty is the evidence pertaining to the one missed run for which Miracle Mile would have been paid $284.07. Evidence of other damages is either nonexistent or speculative. Therefore, the Court grants Progressive's alternative request that Miracle Mile's damages for breach of contract be limited to $284.07.

B. <u>Negligence</u>

Defendant is entitled to summary judgment with respect to Plaintiff's negligence claim. Under Georgia law, a plaintiff must establish the following elements to prevail on a negligence claim:

> (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

<u>Lee Street Auto Sales, Inc. v. Warren</u>, 102 Ga. App. 345, 345, 116 S.E.2d 243 (1960). A mere failure to satisfy contractual duties does not give rise to liability in tort. <u>See</u> O.C.G.A. § 51-1-1 (defining tort as "the unlawful violation of a private legal right other than a mere breach of contract, express or implied"); <u>see also</u> <u>Infinity Transp. III, LLC v. XPO Intermodal, Inc.</u>, 304 F. Supp. 3d 1320, 1331 (N.D. Ga. 2018) (internal citation omitted) ("The general rule in Georgia is that a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties . . . ."). Here, Miracle Mile points to no evidence or legal authority to support the existence of a special or confidential relationship between Miracle Mile and Progressive. In the absence of such a relationship or an independent duty imposed by law, the negligence claim is due to be dismissed.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment [Doc. No. 44]. The motion is granted with respect to the request that Plaintiff's damages for breach of contract be limited to $284.07, if Plaintiff prevails at trial on the breach of contract claim, and the motion also is granted with respect to the negligence claim. The motion is denied with respect to Defendant's liability for breach of contract.

SO ORDERED this <u>16th</u> day of <u>September</u>, 2019.

<u>s/ CLARENCE COOPER</u>
CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE